# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LUCIANO D.,

           Claimant,

           v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

           Respondent.

No. 24 C 6797

Magistrate Judge Karyn L. Bass Ehler

## MEMORANDUM OPINION AND ORDER

Luciano D..[1] ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security[2] ("Commissioner"), denying his application for disability insurance benefits and supplemental security income. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 9]. After reviewing the record and the parties' briefs, the Court grants Claimant's request for remand in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 18] ("Motion") and denies the Commissioner's Motion for Summary Judgment [ECF No. 21].

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

1

## I.     Procedural History

On October 20, 2021, Claimant filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income. (R.15). Claimant initially alleged a disability beginning March 15, 2020, but at the hearing amended the alleged onset date to September 6, 2020. (R.15, R.18). The application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.10). A telephone hearing was held on September 21, 2023, at which Claimant was represented by an attorney. (R.15). A vocational expert also testified. (R.15). The ALJ issued a decision on January 4, 2024, finding Claimant not disabled under the Social Security Act and denying benefits. (R.15-23). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-6). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.     The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must determine whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant

2

retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi*, 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the sequential test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since March 15, 2020, the original alleged onset date. (R.17). At step two, the ALJ found Claimant had the following medically determinable impairments: "depression; hypertension; hyperlipidemia; diabetes mellitus; neuropathy; degenerative disc disease; 'probable' degenerative joint disease of the shoulders and hands; palmar nodule, right hand; history of lung collapse; shoulder tendinitis." (R.17). The ALJ concluded, however, that "the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities. Thus, the claimant does not have a severe impairment or combination of impairments." (R.23). Therefore, the ALJ found Claimant was not disabled and did not continue the analysis beyond step two.

## DISCUSSION

### I. Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the

ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.'. . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." . . . At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving

4

conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding the ALJ's decision must be affirmed even if "reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## II.     Analysis

As discussed above, at step one the ALJ found Claimant had not engaged in any substantial gainful activity since the original alleged onset date and then ended the opinion following the ALJ's determination at step two of the sequential evaluation process that Claimant had no severe impairments. At step two, it is Claimant's burden to prove his impairments meet the severity threshold. *See Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Under the regulations, a "non severe" impairment is "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Soc. Sec. Ruling ("SSR") 85–28. A claimant's burden to show the existence of a severe impairment at step two is not substantial. The Seventh Circuit has explained that "[t]he Step [two] determination is a *de minimis* screening for groundless claims . . . " *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). In close cases, the ALJ should proceed with the rest of the sequential evaluation process. *See* SSR 85–28 ("A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.") ("Great care should be exercised in applying the not severe

5

impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step"). *See also Ellis v. Kijakazi*, 2022 WL 1085164, at *2 (N.D. Ill. Apr. 11, 2022) (discussing legal standard at step two and remanding where "ALJ erred in the Step Two analysis because the medical evidence did not clearly establish that Plaintiff's impairment or combination of impairments had only a minimal effect on Plaintiff's ability to perform basic work activities"). In making the step two determination, as is the case with respect to the other steps of the sequential analysis, an ALJ "must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted).

As set forth further below, the Court finds the ALJ's determination that Claimant's diabetes and related conditions such as foot pain and neuropathy was not a severe impairment at step two was not supported by substantial evidence. The Court also finds the ALJ did not adequately support her decision finding the state consultant reconsideration opinion not persuasive.

**A. The ALJ's determination that Claimant's diabetes and related conditions such as foot pain and neuropathy were not severe impairments was not supported by substantial evidence.**

At step two, the ALJ found Claimant had certain medically determinable impairments including diabetes mellitus and neuropathy. (R.17). Although Claimant initially argues the ALJ erred in finding none of his impairments lasted more than 12 continuous months, Motion [ECF No. 18] at 5, the Court views the issue a bit differently. At least as to Claimant's diabetes, the ALJ's opinion makes clear that she recognized his diabetes was a medically determinable impairment that existed for more than 12 months. *See, e.g.*, (R.19 (noting Claimant was hospitalized for a collapsed lung in September 2020 and was discharged after three weeks to long-term care where

6

he remained until late October 2020 because his "stay was complicated by uncontrolled diabetes mellitus and acute kidney insufficiency, but the claimant's acute impairments were effectively treated during this stay"); *id.* (describing July 2021 visit where Claimant reported "he was not eating as he should be to manage his hypertension or diabetes mellitus, but he was taking his medication as prescribed"); *id.* (noting Claimant's "A1C was elevated in October 2021 because he ran out of medication"); R.20 (Claimant "seen for a diabetic foot exam for the first time in July 2022" and "[e]xamination found decreased sensation and faint pulse, consistent with his history of diabetes mellitus"); R.21-22 (Claimant "again referred to podiatry for diabetic foot care" in February 2023; R.22 (in March 2023, Claimant "reported improvement in depression and diabetes mellitus symptoms, his hypertension and diabetes were under better control with medication"); *see also* R.22 (discussing state agency consultant opinions finding diabetes was a medically determinable impairment)).[3]

Instead, the ALJ concluded that "clinical findings fail to support any significant limitations persisting for the requisite twelve continuous months" for any of Claimant's medically determinable impairments. (R.19). The Court recognizes at step two, "[t]he relevant inquiry is not whether Plaintiff had a particular medically determinable impairment for 12 months, but whether the impairment(s) caused him to be unable to engage in substantial gainful activity for that amount of time." *See Garry B. v. O'Malley*, 2024 WL 4953888, at *3 (N.D. Ill. Dec. 2, 2024) (citing SSR 23-1p). To that end, Claimant argues the ALJ failed to consider relevant evidence of Claimant's

---

[3] The Commissioner says Claimant's long-term diagnosis with diabetes is irrelevant because "he worked for several years at substantial gainful levels during that time." Response [ECF No. 21] at 5. As Claimant points out, however, the ALJ did not rely on or even consider Claimant's prior work history from years earlier as a basis for discounting his claims of disability after the alleged onset date in September 2020. Reply [ECF No. 22] at 3. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

history of diabetes, standing limitations, and walking limitations, including his medical history of diabetic foot pain and cane usage. Motion [ECF No. 18] at 3-7.

With respect to Claimant's diabetic foot pain, although the ALJ summarized the evidence of Claimant's July 2022 diabetic foot examination, the ALJ also noted it was "the first time" Claimant had such an examination. (R.20). This suggests the ALJ may have concluded that Claimant's diabetic foot pain was not an ongoing symptom of his diabetes, although the ALJ did not make such a finding explicitly and the ALJ also acknowledged the July 2022 foot examination "found decreased sensation and faint pulse, consistent with his history of diabetes mellitus." (R.20).

In any event, even if the ALJ did not find record evidence supported the existence of Claimant's diabetic foot condition prior to July 2022, the ALJ should still have addressed whether Claimant's diabetes caused ongoing foot pain that interfered with Claimant's walking or standing and persisted for more than 12 continuous months from that point forward. To that end, although the ALJ noted a February 2023 report that Claimant continued to be treated for diabetic foot care, she did not otherwise address whether Claimant was receiving ongoing treatment or whether evidence established that Claimant's diabetic foot condition had resolved. (R.21-22). In addition, although the ALJ acknowledged Claimant was observed using a cane at physical therapy appointments in 2023, the ALJ did not note that these reports state that Claimant has "diabetic neuropathy and sees a podiatrist for this condition." (R.20 (referencing physical therapy reports from April 2023 and May 2023); R.790, R.795)). And, despite finding Claimant had a medically determinable impairment of neuropathy, the ALJ does not directly address his neuropathy impairment anywhere else in her opinion. (R.17).

Moreover, Claimant identifies additional evidence of his ongoing treatment for diabetic foot care that the ALJ did not reference or address in her opinion, citing records from January and September 2023. Motion [ECF No. 18] at 12 (citing HMI Foot and Ankle records from January 2023 and VNA Healthcare records from September 2023). The VNA Healthcare records include a diagnosis of "diabetic polyneuropathy associated with type 2 diabetes mellitus . . . Chronic" and note that Claimant previously received care through Will County but that podiatrist no longer takes his insurance. (R.857-866). The VNA examination report also noted Claimant used special shoes, had diminished sensation in his toes and feet, and "foot deformities: fat pad atrophy and hallux valgus." (R.857-866). The ALJ did not acknowledge this additional record evidence or address whether it potentially supports at least 12 months of significant limitations in walking or standing due to Claimant's diabetic foot pain and neuropathy.

In the Court's view, the ALJ did not identify substantial evidence to support her determination that Claimant's diabetes, including his related foot pain and neuropathy, was not a severe impairment that significantly limited his ability to walk or stand for at least 12 continuous months. Instead, the ALJ appears to have overlooked relevant evidence regarding Claimant's ongoing treatment for these conditions that may have extended beyond a 12-month continuous period. To the extent the ALJ may have concluded Claimant's diabetic foot pain was an isolated occurrence, that conclusion is not supported by the evidence of ongoing treatment for this condition that the ALJ cited in the opinion as well as the additional record evidence of ongoing treatment for more than a year that the ALJ apparently did not reference in her opinion. *See Easley v. Comm'r of Soc. Sec.*, 2023 WL 6211833, at *3–4 (N.D. Ind. Sept. 22, 2023) (remanding for ALJ to "expressly consider the record pertaining to [claimant's] foot pain in determining his medically determinable impairments. To the extent the record does not support that foot pain is a medically

9

determinable impairment, she should explain her reasoning.") (citing *Craft v. Astrue*, 539 F.3d 668, 671 n.1 (7th Cir. 2008): "Neuropathy is . . . a common complication of diabetes.").

Claimant also argues the ALJ erred in discounting other evidence that Claimant had walking and standing limitations including his use of a cane. The ALJ noted Claimant used a cane at his April 2022 consultative examination where he was reported to have "walked with a 'slightly-antalgic' gait 'with the use of a stick cane for confidence'" but stated "there is no documentation that claimant was prescribed a cane before or after this examination" and that "[a] finding of disability cannot be based on the claimant's subjective allegations of pain or his own desire to use a cane for 'confidence'. . ." (R.20).

As an initial matter, to the extent the ALJ rejected evidence of Claimant's cane usage merely because he did not have a prescription, that is arguably inconsistent with Seventh Circuit authority acknowledging that "[a] cane does not require a prescription." *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). In addition, Claimant does identify evidence suggesting he may have been prescribed a cane when he was discharged from the hospital in November 2020 that the ALJ did not address in her opinion. Motion [ECF No. 18] at 6. (R.571 (November 5, 2020 discharge note following hospitalization for a collapsed lung including reference to "[Pt's] straight cane ordered through MARS pharmacy and family to pick up")). At a minimum, the ALJ's statement that there was no documentation that Claimant was prescribed a cane appears to be inaccurate in light of these hospital discharge notes. In addition, Claimant notes that during treatment in 2023, his physical therapists adapted exercises for him to complete while using a cane. Motion [ECF No. 18] at 6 (citing R.824 (Ex. 17F, physical therapy record from May 2023 referencing instructions for exercises with use of a cane)). The Commissioner does not respond to this additional medical evidence regarding Claimant's use of a cane.

10

Beyond the lack of a prescription for a cane, the ALJ also discounted Claimant's need for a cane because "[C]laimant used a cane at consultative examinations but is rarely noted to use an assistive device in other records." (R.20). Although characterized as rare, the ALJ cited several instances of Claimant's cane usage other than at consultative examinations, including at a December 2020 visit, in a "handful of visits in 2023," as well as at psychiatric visits in 2023. (R.20). On the other hand, the ALJ did not provide citations to any records to directly support her conclusion that Claimant rarely used an assistive device at other medical visits.

The Commissioner attempts to buttress the ALJ's reasoning in discounting the evidence of Claimant's cane use but does so by attributing conclusions to the ALJ that are not present in the opinion. *See Jeske*, 955 F.3d at 587. For instance, the Commissioner says the ALJ "also pointed to the opinions [of the state agency consultants] in noting that a cane was not recommended," Response [ECF No. 21] at 5, but the ALJ did not reference the consultant opinions when discounting Claimant's cane usage nor did the ALJ describe the agency consultant opinions as stating that no cane was recommended. (R.20, R.22).

The Commissioner also says the ALJ "further discussed that while plaintiff appeared with a cane at some appointments, he regularly appeared without a cane at many others," pointing to certain exhibits that were summarized by the ALJ in other parts of the opinion. Response [ECF No. 21] at 5-6 (citing records from visits in October 2021, June 2022, September 2022, January 2023, and August 2023). Although the ALJ did not expressly reference these exhibits to support her conclusion that Claimant was "rarely noted to use an assistive device," *see* R.20-22, the Court must consider the ALJ's opinion holistically and acknowledges that these examination records do not include any mention of a cane.[4]

---

[4] The ALJ also noted that Claimant's treating nurse did not include Claimant's use of a cane or other assistive device despite providing an opinion dated November 2021 that assessed him with "extreme limitations."

In the Court's view, however, the relevant inquiry at step two is not whether Claimant used a cane at every medical appointment but rather whether the record reflects that Claimant had a continuous 12-month period where he was significantly limited in his ability to walk or stand by a medically determinable impairment or combination of impairments. Here, the ALJ appears to have conflated the Step Four analysis of whether the record supported a finding that Claimant's cane was a "medical necessity" that must be included in any residual functional capacity ("RFC") with the step two analysis of whether the evidence of Claimant's cane use supported a finding that his impairments imposed significant limitations in walking or standing. (*See* R.20 ("The record fails to support the medical necessity for the claimant to use any assistive device, nor does it establish the existence of significant functional limitations due to any impairment persisting for twelve continuous months during the period at issue.")). The ALJ appears to have jumped ahead in the sequential analysis by determining that Claimant's cane was not medically necessary without otherwise engaging in the functional analysis required at steps four and five. As the Seventh Circuit explained in considering the scope of review at step two, "[a]though the ALJ could still find that [the claimant], with medication, can perform work and is not disabled, an assessment of the functional limitations caused by an impairment is more appropriate for Steps 4 and 5, not Step 2." *Meuser*, 838 F.3d at 910–11.[5]

As discussed above, the record reflects that Claimant's treatment for diabetic foot pain began in July 2022 and continued through at least September 2023, as well as his use of a cane at

---

(R.20). As discussed above, even if this supported the ALJ's finding that Claimant did not need to use a cane at that time, it does not resolve the Claimant's potential walking or standing limitations related to his diabetic foot pain in 2022 and 2023.

[5] "'A cane must be incorporated in an RFC if it is a medical necessity.' 'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing . . .'" *See*, *e.g.*, *Michael M. v. Bisignano*, 2026 WL 636823, at *3 (N.D. Ill. Mar. 6, 2026) (citing SSR 96-9p, 1996 WL 374185, at *7) (other internal citations omitted).

certain medical visits before and during this time period, including during a consultative examination in April 2022, at physical therapy appointments in April and May 2023, and at a psychiatric appointment in July 2023. In the Court's view, the ALJ's conclusion that Claimant's diabetes and diabetic foot pain, including neuropathy, were not severe impairments at step two because Claimant did not experience signification limitations from these conditions, including as to walking and standing, for at least 12 continous months is not supported by substantial evidence. The ALJ did not consider relevant evidence of Claimant's ongoing treatment for a diabetic foot condition and neuropathy for potentially more than 12 months after July 2022 and did not reconcile the evidence of Claimant's cane use in 2023 with the evidence related to Claimant's treatment for those diabetes-related conditions. Remand is therefore necessary so that the ALJ can consider that evidence and determine whether Claimant had any severe impairments for 12 continuous months during the relevant time period and, if so, whether the sequential analysis should extend beyond step two.

**B. The ALJ did not adequately support the rejection of the state agency consultant opinion on reconsideration finding of severe impairments.**

Claimant also argues that the ALJ's decision to credit the initial opinion of the state agency consultant finding Claimant had no severe impairments rather than the reconsideration-level opinion concluding Claimant's diabetes and hypertension were severe impairments was not adequately supported.

Regarding the state agency opinions, the ALJ stated:

The state agency medical consultants at the initial level of administrative review opined that the claimant had no severe medically determinable impairment (Ex. 2A, 3A). On reconsideration, the DDS indicated the claimant had severe impairments, namely hypertension and diabetes mellitus, as well as a non-severe depressive disorder (Ex. 5A, 6A). The reconsideration consultants cited minimal evidence to support their conclusion that the claimant was significantly limited by his medically determinable impairments and the evidence cited was limited to the claimant's symptom complaints and a handful of examination findings that fail to establish

significant functional limitations over the period at issue. The reconsideration assessment as to the claimant's physical functioning is unpersuasive due to the lack of support for persistent limitations in the longitudinal record. The initial assessment that the claimant does not have significant limitations and does not have a severe impairment is more consistent with the overall record and is more persuasive.

(R.22).

The Commissioner responds by briefly arguing the ALJ's choice to credit the initial opinion over the reconsideration should be affirmed under a deferential standard of review. Response [ECF No. 21] at 7.

While the Court acknowledges the standard of review is deferential, the ALJ must nevertheless adequately support the decision to credit one medical opinion over another, particularly where the second opinion considers additional evidence that was not available at the time of the first opinion. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("when the evidence comes in the form of a medical opinion from a state agency physician, the agency's own regulations and rules require that the ALJ 'not ignore these opinions and must explain the weight given to the opinions in their decisions.'"). In deciding how persuasive a given opinion or finding is, the ALJ considers supportability, consistency, and other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(b). Although a detailed analysis is not required, the ALJ must give a reviewing court a sufficient basis to connect the outcome to the record. *Id.*

The Court agrees the ALJ did not adequately support her decision to credit the initial opinion over the reconsideration opinion. The reconsideration opinion considered additional evidence that had not been reviewed by the consultants at the initial level, a clear difference between the two state consultant opinions that the ALJ did not adequately address in reconciling the two opinions. The reconsideration opinion (dated November 22, 2022) discussed a June 28,

14

2022 report that Claimant had "callus formation bilaterally, dryness to feet" as well as a subsequent "diabetic foot eval" on July 25, 2022 "which found "skin was atrophic and shiny. Feet had diminished vibratory, sharp/dull, proprioceptive sensation, and light touch sensation. Dorsally contracted digits 2-5 bilaterally. Dx diabetic, hammer digits, pes cavus." (R.100). Although the ALJ acknowledges in passing that the reconsideration opinion referenced "a handful of examination findings" she does not specifically address the new evidence of diabetic foot pain that was considered at the reconsideration level or explain why she concluded this additional evidence did not support the reconsideration opinion that Claimant's diabetes was a severe impairment. (R.22). Nor did the ALJ explain the basis for her conclusion that the reconsideration opinion that Claimant's diabetes was a severe impairment was not consistent with the overall record, including with respect to subsequent record evidence discussed above of Claimant's ongoing treatment for diabetic foot pain extending into 2023. For this reason, the Court concludes remand is also necessary to allow the ALJ to explain her findings regarding the persuasiveness of the reconsideration opinion.

*****

As the Court finds a basis to remand on the two grounds described above, the Court declines to consider Claimant's remaining arguments. The Court expresses no opinion on the decision to be made on remand and encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See*, *e.g.*, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687,

15

693 (7th Cir. 1994). On the present record, that explanation is lacking, and the Court cannot perform its appellate review function consistent with controlling law.

## CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's request for remand in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 18] is granted and Commissioner's Motion for Summary Judgment [ECF No. 21] is denied.

It is so ordered.

Karyn L. Bass Ehler
United States Magistrate Judge

Dated:  July 22, 2026

16